**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,           CRIMINAL DIVISION

      vs.                                21-0071

WILLIAM KAETZ a/k/a Bill Kaetz,     Honorable J. Nicholas Ranjan
     Defendant.

## <u>MOTION TO DISMISS—SPEEDY TRIAL</u>

AND NOW, comes the Defendant, William Kaetz a/k/a Bill Kaetz, by and through his undersigned attorney, Douglas Sughrue, Esquire, and, pursuant to Fed.R.Cr.P. 12(b)(3)(A)(ii) and (iii) and (g) and 48(b)(1) and (2), moves to dismiss the indictment for the following reasons:

1.     On October 18, 2020, Defendant was arrested and charged at 2:20-mj-09421 by complaint with committing the following offenses in the District of New Jersey on October 18, 2020:

   (1) 18 U.S.C. §875(c)—Interstate communications containing threats to injure; and

   (2) 18 U.S.C. §115(a)(1)(B)—Threaten to assault and murder a United States Judge.

2.     On October 19, 2020, Defendant was ordered detained, the undersigned was appointed to represent Defendant, and the defense request to continue the detention hearing was granted and said hearing was re-scheduled to October 26, 2020.

3.     On October 26, 2020, a hearing was held before the Honorable Cynthia Reed Eddy, U.S.M.J. (W.D.Pa.), at which Defendant was ordered detained.

4.     On December 15, 2020, Defendant sought review of said detention order in the United States District Court for the District of New Jersey at 2:20-cr-01090 which, on December 23, 2020, deemed Defendant to have filed an appeal from said order to said District Court.

5.     On January 2, 2021, Defendant filed a Reply to USA's Response to Motion to Reconsider Detention in which he, *inter alia*, asserted his right to speedy trial seeking that his case be immediately brought before a grand jury to determine if an indictment should issue.

6.      By Memorandum Order dated January 4, 2021, said District Court ruled on Defendant's request for review of the Magistrate Judge's order of detention and affirmed the decision.

7.      On January 13, 2021, Defendant filed a Notice of Appeal from said January 4, 2021 Order which was docketed in the United States Court of Appeals for the Third Circuit at 21-1075.

8.      On January 19, 2021, Defendant filed, in said Court of Appeals at No. 21-1075, a motion, and memorandum in support thereof, for bail pending trial.

9.      On January 20, 2021, said Court of Appeals ordered that any response to said motion for bail pending trial be filed on or before January 25, 2021.

10.     On January 21, 2021, Defendant was charged in a 4-count indictment in the above-captioned matter with committing the following offenses in the District of New Jersey:

(1) 18 U.S.C. §115(a)(1)(B) and (b)(4)—Intent to impede, intimidate and interfere with U.S. District Court Judge 1 while in, and retaliate against Judge 1 on account of, the performance of official duties on October 18, 2020;

(2) 18 U.S.C. §875(c)—Knowingly and willfully transmitting in interstate commerce an email to, containing a threat to injure the person of, Judge 1 on October 18, 2020;

(3) 18 U.S.C. §119(a)(1)/(2)—Knowingly made restricted personal information about Judge 1 publicly available with intent, and that said information would be used, to threaten and intimidate Judge 1 by making public on social media sites Facebook and Twitter such information, including the home address of Judge 1 on October 18, 2020; and

(4) 18 U.S.C. §922(g)(1)—Knowingly possessed, in and affecting interstate commerce and on October 26, 2020, a firearm and ammunition after having been convicted (on July 16, 2003) of an offense (18 U.S.C. §876) punishable by imprisonment of more than 1 year.

11.     On January 25, 2021, the USA filed, in said Court of Appeals at No. 21-1075, a response to Defendant's motion for bail pending trial.

12.     On February 2, 2021, Mr. Kaetz attended an arraignment and initial appearance on said indictment.

13.     On February 3, 2021, the United States Court of Appeals for the Third Circuit, at No. 21-1075, denied Defendant's motion for bail pending trial.

14.     Defendant asserts a violation of his rights under the Speedy Trial Act, 18 U.S.C. §§3161-

3174, and the Fifth and Sixth Amendments to the United States Constitution.

**Speedy Trial Act**:

The Speedy Trial Act requires an information/indictment be filed in the following period:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. §3161(b) (Time limits and exclusions).

Defendant was arrested on October 18, 2020 and an indictment was filed on January 21,

2021, a period of 95 days.  Sanctions for violating Section 3161(b) include the following:

 **(a)(1)** If, in the case of any individual against whom a complaint is filed …, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.  In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. §3162(a)(1) (Sanctions).

Regarding 18 U.S.C. §3161(h)(1), there was no proceeding to determine the mental or

physical capacity of Defendant, there were no other charges or trial thereon, the only interlocutory

appeal and pre-trial motion filed involve pre-trial detention which does not interfere with the filing

of an indictment, there is no related case or issue of transfer of Defendant between districts, there

has been no proposed plea agreement submitted to the Court, and there is no delay that is

reasonably attributable to any matter concerning Defendant which was under advisement by the

3

Court.[1]

As to subsections (h)(2), (3) and (4), there was no agreement between the parties to delay the filing of an indictment, there is no delay due to absence of Defendant or any witness, and there is no delay due to the mental/physical incapacity of Defendant, respectively.  As to subsections (h)(5), (6) and (8), the instant indictment is the initial indictment (hence, there was no dismissal and re-filing of charges), there are no co-defendants involved in the matter, and no evidence or witness is expected to be located in another country, respectively.

This District has held COVID-19 delay excludable pursuant to 18 U.S.C. §3161(h)(7)(A):

> due to the COVID-19 pandemic, … standing orders were entered by Chief Judge Freda
> L. Wolfson governing court operations and excluding time under the Speedy Trial Act.
> The time period between March 16, 2020 and January 4, 2021 is "excluded time" in *all*
> criminal proceedings in th[is] District … pursuant to 18 U.S.C. §3161(h)(7)(A).

United States v. Hafner, 2020 U.S.Dist.Lexis 224027, *4 (D.N.J. Nov. 30, 2020) (Shipp, D.J.) (citations omitted; emphasis in original).  Nonetheless, the following matters must be considered:

> **(B)** The factors, among others, which a judge shall consider in determining whether to
> grant a continuance under subparagraph (A) … in any case are as follows:
>   **(i)** Whether the failure to grant such a continuance … would be likely to make a
> continuation of such proceeding impossible, or result in a miscarriage of justice.
>   **(ii)** Whether the case is so unusual or so complex, due to the number of defendants,
> the nature of the prosecution, or the existence of novel questions of fact or law, that it
> is unreasonable to expect adequate preparation for pretrial proceedings or for the trial
> itself within the time limits established by this section.
>   **(iii)** Whether, in a case in which arrest precedes indictment, delay in the filing of the
> indictment is caused because the arrest occurs at a time such that it is unreasonable to
> expect … filing of the indictment within the period … in section 3161(b) or because
> the facts upon which the grand jury must base its determination are unusual or complex.
>   **(iv)** Whether the failure to grant such a continuance…. would deny … reasonable time
> to obtain counsel, would unreasonably deny … continuity of counsel, or … time

---

[1] While Defendant has made, and may hereafter make, *pro se* requests for relief, the counseled requests for relief were limited to Defendant's (continued) pre-trial detention. See United States v. Olson, 2020 U.S.Dist.Lexis 193045, *29 n.15 (C.D.Cal.) (citation omitted; emphasis in original) ("section [3161(h)(1)(D)] excludes only pretrial delay '*resulting from*' a pending motion, not all pretrial delay that merely coincides with the pendency of a motion. ….  No delay in the trial resulted during the time this motion was pending").

necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. §3161(h)(7)(B).[2]

While empaneling a jury during the COVID-19 pandemic may conceivably warrant a delay of trial for the period specified in Chief Judge Wolfson's COVID-19 standing orders, the delay in the instant matter is the failure to bring Defendant's case before a grand jury when indictments were issued between October 20 to December 31, 2020 in at least 114 cases (at least 2 of which were commenced) after Defendant's arrest.  See 2:20-cr-01090 Doc. #7 (at pp. 506) and 7-3.

Section 3174 allows for an extension under the Speedy Trial Act for judicial emergencies for the period between indictment and trial but the limits under 18 U.S.C. 3161(b)—

> (a) In the event that any district court is unable to comply with the time limits set forth in section 3161(c) due to the status of its court calendars, the chief judge, where the existing resources are being efficiently utilized, may, … apply to the judicial council of the circuit for a suspension of such time limits as provided in subsection (b).  ….
> (b) ….  During such period of suspension, the time limits from arrest to indictment, set forth in section 3161(b), shall not be reduced, nor shall the sanctions set forth in section 3162 be suspended; but such time limits from indictment to trial shall not be increased to exceed one hundred and eighty days.  ….

18 U.S.C. §3174(a), (b) (Judicial emergency and implementation).

Accordingly, the Speedy Trial Act itself precludes issuance of an extension of the sort which Chief Judge Wolfson's standing orders purport to grant to/of Section 3161(b)'s limitations.

Due to the fact this is not a complex case (a single defendant and few witnesses) and the USA was able to bring witnesses to testify, at the October 26, 2020 preliminary and detention hearings, about the facts upon which the instant prosecution is based, there is no reasonable basis to excuse the delay in obtaining a timely indictment based upon abstract concerns about the COVID-19 pandemic when actual grand jury proceedings were not so affected by the pandemic

---

[2] See 18 U.S.C. §3161(h)(7)(C) ("No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government")

to excuse the delay here.

In considering the factors set forth in 18 U.S.C. §3162(a)(1) on whether dismissal of the charges/case with or without prejudice is appropriate, while the offenses are significant, they did not involve injury to, or an attempt to injure, a person or property and the sentence of imprisonment Defendant may face upon conviction on all counts appears to be less than 3 years. In addition, the delay in obtaining an indictment was not caused by Defendant and was caused, at the very least, by neglect on the part of the government which appeared to believe, in light of said standing orders, it could continue to delay indictment before this Court without sanction by this Court and, then, when the government was ordered, on January 20, 2021, to file a response by January 25, 2021 to Defendant's motion for pre-trial release filed in the United States Court of Appeals at 21-1075, the government obtains an indictment on the following day (January 21, 2021)—apparently uncertain of how the Court of Appeals would consider such inaction in relation to the issue of pre-trial detention.

In light of the number of indictments obtained between October 20 and December 31, 2020 in the District of New Jersey, it would appear that a grand jury was in session during the 30-day period following Mr. Kaetz's arrest such that the government's violation of 18 U.S.C. §3161(b) comprises a period of 65 days. Even if a grand jury was not in session during that period, the government, nonetheless, violated 18 U.S.C. §3161(b) by at least 35 days. See United States v. Williams, 2019 U.S.Dist.Lexis 167972, *5-*6 (D.V.I.) (citing United States v. Tinklenberg, 563 U.S. 647, 661 (2011)) ("Weekend days and holidays are included in the Speedy Trial count").

It is not unprecedented that a district court found a standing order authorizing delays or extensions in/of the periods set forth in the Speedy Trial Act in a district due to COVID-19 to be held invalid in a particular case where, inter alia, grand jury proceedings were being held—

if one had any doubt about the possibility of conducting a jury trial during the pandemic, one need look no further than the very courthouse in which Mr. Olsen seeks to have his jury trial … There, between June 24 and September 30, 2020, a grand jury convened and returned 41 indictments. …. That means that the grand jury, which has at least 16 people on it, gathered in person in the … courthouse numerous times. While they were gathered, they heard testimony from witnesses and deliberated together. ….

* * * *

…. The General Order and the government note that people continue to be infected, hospitalized, and— tragically—die due to the virus, and that holding jury trials will likely put people at increased risk of contracting the virus. …. The Court, of course, acknowledges the public health risk the virus poses to people. But the Constitution does not turn on this consideration. Instead, to protect the fundamental right to a speedy trial guaranteed by the Sixth Amendment, the Constitution requires that a trial only be continued over a defendant's objection if holding the trial is *impossible*. Holding Mr. Olsen's trial at this time is plainly not impossible.

* * * *

…. The Chief Judge … decided not to summon jurors for Mr. Olsen's trial. He made that decision knowing that holding a jury trial in Orange County was possible. He made that decision knowing that a grand jury was convening in the Orange County federal courthouse. …. His decision was knowingly and willfully made. The primary factor driving the Chief Judge's decision was the risk that people might get sick from the coronavirus. …. But his decision was made with little or no regard for Mr. Olsen's constitutional right to a public and speedy trial. ….

The Central District's constitutional violation here also was not a mere technical one. …. Rather, it was a substantive policy decision to suspend the constitutional rights of Mr. Olsen and every other defendant unwilling to waive time. ….

… barring reprosecution … by dismissing with prejudice is the only sanction with enough teeth to create any hope of deterring additional delay in the resumption of jury trials and avoiding further dismissals of indictments for violations of defendants' constitutional rights …. A dismissal without prejudice, on the other hand, allows the government simply to go before the grand jury, obtain a new indictment, and proceed as if no constitutional violation ever occurred. …. In effect, there would be no adverse consequences from the Central District's knowing and willful decision to violate Mr. Olsen's constitutional right to a public and speedy trial. Such a meaningless result would "send exactly the wrong signal" and foster in the future "a cavalier regard, if not a concerted disregard" of the Constitution. …. This Court will not let that happen.

* * *

The Central District denied Mr. Olsen his constitutional right to a … speedy trial. It did so not because it was impossible to conduct the jury trial as is required by the Sixth Amendment. It did so because it was fearful people would get sick from the coronavirus. But no emergency or crisis, not even the coronavirus pandemic, should suspend the Sixth Amendment or any of our constitutional rights. The Constitution guarantees these rights to us during all times, good or bad. Because Mr. Olsen was denied his Sixth Amendment right to a public and speedy trial, this Court now must dismiss the charges against him, and that dismissal must be with prejudice.

7

United States v. Olsen, --- F.Supp.3d ---, 2020 U.S.Dist.Lexis 193045, *14, *16, *25-*29 (C.D.C.) (footnotes and citations omitted; emphasis in original).

Instantly, 18 U.S.C. §3174 does not apply to 18 U.S.C. §3161(b) and while this District's standing orders regarding the COVID-19 pandemic states it applies to deadlines set forth in 18 U.S.C. §3161(b), said order(s) are infirm as based upon ***abstract*** extraordinary circumstances which are not borne out in fact, at least under the circumstances of this case.

The offenses under 18 U.S.C. §§115(a)(1)(B) and 875(c) are contained in both the October 18, 2020 complaint and the January 21, 2021 Indictment and must be dismissed.[3] See United States v. Watkins, 339 F.3d 167, 173 (3d Cir.2003), cert. denied sub nom. Watkins v. United States, 540 U.S. 1221 (2004) ("the complaint charged Defendants only with conspiracy. Accordingly, the Government's violation of Defendants' Speedy Trial Act rights mandates that this charge be dismissed").[4]  However, given the offense date and the similarity in factual basis and elements of the offense charged at Count 3 of the Indictment—18 U.S.C. §119(a)(1)/(2)—that closely-related offenses should be dismissed as well.  As to dismissal on that basis, the Third Circuit has observed:

> We have not heretofore addressed the gilding exception, and other courts question whether it even exists. ….
>
> …. Even assuming (without deciding) that the gilding exception to the Speedy Trial Act is viable, it does not apply in this case. We agree … that because conspiracies and substantive offenses contain different elements, "it is questionable whether a substantive offense can ever gild a conspiracy charge." ….

---

[3] While Count 1 of the Indictment adds 18 U.S.C. 115(b)(4) to the charge, that provision merely sets forth the penalty for violating 18 U.S.C. §115(a)(1)(B) and does not affect any of the elements of the offense of 18 U.S.C. §115(A)(1)(B) as charged in the complaint.

[4] See also United States v. Oliver, 238 F.3d 471, 473 (3d Cir.2001) ("the Speedy Trial Act requires the dismissal of only those charges that were made in the original complaint that triggered the thirty-day time period"); United States v. Cox, 553 Fed.Appx. 123, 129 (3d Cir.2014), cert. denied sub nom. Cox v. United States, 574 U.S. 1180 (2015) (citation omitted) ("The District Court properly dismissed Count One of the indictment because more than 30 days had elapsed between Cox's arrest on the May 10, 2010 charges and the filing of the indictment on that charge").

United States v. Watkins, 339 F.3d 167, 177 (3d Cir.2003), cert. denied sub nom. Watkins v.

United States, 540 U.S. 1221 (2004) (citations omitted).

Even though the gilding exception has not yet been adopted in the Third Circuit, it has also

not yet been rejected nor has the United States Supreme Court had occasion to consider it.  This

exception is described by the Tenth and Fifth Circuits as follows:

> As a general rule, new Speedy Trial Act periods begin to run with respect to an
> information or indictment adding a new charge not required to be brought in the
> original indictment. ….  However, when the later charge is merely a part of or only
> "gilds" the initial charge, the subsequent charge is subject to the same Speedy Trial Act
> limitations imposed on the earlier indictment. ….

United States v. Andrews, 790 F.2d 803, 808-809 (10th Cir.1986), cert. denied sub nom. Andrews

v. United States, 481 U.S. 1018 (1987) (citations omitted).

> Where "a subsequent charge merely 'gilds' the initial charge filed … and the different
> accusatorial dates between the two charges are not reasonably explicable," this Court
> has held that "the date of the initial arrest may trigger the applicable time periods of the
> Act as to prosecution for both offenses." ….  Webster's Third New International
> Dictionary defines gilding as "embellishing."  Webster's Collegiate Dictionary defines
> it as "unnecessary ornamentation." ….  Thus, a gilded charge is one that merely
> annotates in more detail the same charge alleged in the initial accusatory instrument.

United States v. Bailey, 111 F.3d 1229, 1236 (5th Cir.), cert. denied sub nom. Bailey v. United

States, 522 U.S. 927 (1997) (citations omitted).[5]

Count 4 (18 U.S.C. §922(g)(1)) is the only offense in the Indictment which was not also

contained in the complaint—and, thus, is not subject to dismissal under a restrictive reading of 18

U.S.C. 1362(a)(1)—and is independent in time and subject matter of any offense in the complaint

---

[5] See Cox, 553 Fed.Appx. at 129 (citation omitted) ("the remaining five counts in the superseding indictment charged conduct committed on different dates that was never previously charged in a complaint.  Therefore, those counts did not violate the Speedy Trial Act"); United States v. Hall, 2014 U.S.Dist.Lexis 60330, *4-*5 n.1 (D.N.J.) (citation omitted) ("Because Counts I and III of the Superseding Indictment were not contained in the Complaint, alleged violation of a different statute in the case of Count I, and alleged different conduct in Count III, their inclusion in the indictment did not violate the Act").

—thus, it is also not subject to dismissal under the gilding exception to the Speedy Trial Act.

Regarding the factors in 18 U.S.C. §3162(a)(1), re-prosecution (via a dismissal without prejudice) offends the administration of justice and the Act in light of the length of the excessive delay (of at least 35 days and as much as 65 days).[6]

> The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:
>
> > "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"

United States v. Taylor, 487 U.S. 326, 340 (1988) (citations omitted).

Additionally, dismissal with prejudice is warranted in light of the relatively non-serious nature of the charges at Counts 1, 2 and 3 of the Indictment.[7]

The facts and circumstances leading to the dismissal of charges, as described above, show that the government was not precluded from complying with the time limitations under 18 U.S.C. § 1361(b) and offers no specific reasons for failing to bring Defendant's case before a grand jury despite the issuance of indictments in many other cases during the relevant time period.

---

[6] See United States v. Hall, 2014 U.S.Dist.Lexis 60330, *11 (D.N.J.) (citations omitted) ("There is no hard and fast rule in the Third Circuit or this District concerning how many days of post-arrest and pre-indictment delay give rise to a presumption of prejudice weighing in favor of Defendant on a motion to dismiss for violation of the Speedy Trial Act. Violations of only a few days are routinely found not to give rise to any prejudice").

[7] The maximum term of imprisonment for the offenses charged at Count 1 and Counts 2 and 3 of the Indictment is 6 years and 5 years, respectively. See 18 U.S.C. §§115(b)(4), 119(a), 875(c). See also United States v. Williams, 2019 U.S.Dist.Lexis 167972, *5-*6 (D.V.I.) (citations omitted) ("An appropriate measure of the seriousness of an alleged crime is 'the punishment prescribed by statute.' ….  Generally, crimes that carry penalties of five years or more are considered serious offenses for the purposes of the Speedy Trial Act"); United States v. Stevenson, 832 F.3d 412, 418 (3d Cir.2016) cert. denied sub nom. Stevenson v. United States, --- U.S. ---, 137 S.Ct. 674 (2017) ("courts have consistently agreed that drug trafficking and firearm offenses are serious").

Regarding impact of a re-prosecution on the administration of the Speedy Trial Act and of justice, Defendant and his family have experienced, and continue to experience, anxiety as a result of Defendant's pre-trial incarceration, along with negative financial impact to his business and employment and severe curtailment of his associations, familial and otherwise.

Consequently, both counts in the October 18, 2020 Complaint and Counts 1, 2 and 3 in the January 21, 2021 Indictment must be dismissed with prejudice.[8]

**Sixth Amendment Right to Speedy Trial**:

The United States Constitution provides: "the accused shall enjoy the right to a speedy and public trial." U.S.Const., amend. VI. See Carson v. Simon, 978 F.3d 1051, 1060 (8th Cir.2020) (citation omitted) ("There is no pandemic exception to the Constitution").

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges

United States v. MacDonald, 456 U.S. 1, 8 (1982). See United States v. Loud Hawk, 474 U.S. 302, 310 (1986) (citation omitted; emphasis in original) ("when no indictment is outstanding, only the '*actual* restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment'").

> The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

---

[8] See; Cox, 553 Fed.Appx. at 129 ("Given the seriousness of the charges against Cox, the short period of delay in bringing the indictment (two days), and the absence of any evidence that the Government engaged in a pattern of delay, we conclude that the District Court did not abuse its discretion in dismissing the count without prejudice").

Barker v. Wingo, 407 U.S. 514, 530 (1972) (citations omitted).

Instantly, the length of the delay between the date of arrest/complaint and the January 21, 2021 indictment is 95 days and the delay which, to the date of trial, grows longer.

> at issue here is the reason for the delay …. Barker instructs that "different weights should be assigned to different reasons," … and in applying Barker, we have asked "whether the government or the criminal defendant is more to blame for th[e] delay." …. Deliberate delay "to hamper the defense" weighs heavily against the prosecution. …. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

Vermont v. Brillon, 556 U.S. 81, 90 (2009) (citations omitted) (delay caused by a defendant's counsel, whether appointed or retained, is attributable to the defense).

> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.  And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, … and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

Doggett v. United States, 505 U.S. 647, 657 (1992) (citation omitted).

While the COVID-19 pandemic has been infused into this case, and all other pending criminal cases in the District of New Jersey, by Chief Judge Wolfson's standing orders,[9] the USA does not appear to strongly advance the pandemic as a reason for delay and it also appears the

---

[9] The COVID-19 pandemic has been held not to be attributable to the government—that is, it is a neutral reason—and Defendant does not argue otherwise. See United States v. Bothra, 2020 U.S.App.Lexis 36776, *3 (6th Cir. Nov. 20, 2020) (citations omitted) ("Although in the context of speedy-trial claims, courts have weighed neutral reasons for any delay against the government, … courts have concluded the delay attributable to the pandemic is beyond the government's control").

USA cannot credibly advance such an excuse in light of the 114 or more cases where indictments were obtained since October 20, 2020 through December 31, 2020 and how quickly the government obtained and filed an indictment in the above-captioned matter just over one week, on January 21, 2021, after the pre-trial detention litigation reached the United States Court of Appeals for the Third Circuit (at 21-1075) on January 13, 2021.  As echoed in the above-quoted passage from the Supreme Court's decision in Doggett, if, as the government has alleged in the pre-trial detention litigation in this matter, Defendant's case is very serious, the government would have obtained an indictment much earlier than it did.  That is, the USA's neglect shows how relatively unimportant it actually considered Defendant's case in relation to the 114 or more cases in which it obtained an indictment from October 20 to December 31, 2020.  Any objection to dismissal of the charges cannot be taken seriously and must be viewed unclouded by the specter of COVID-19 which has not been shown to be an actual reason for delay of pre-indictment proceedings in this matter.

Defendant had asserted his Sixth Amendment right to a jury trial on January 4, 2021 by counseled filing in the District Court and earlier in one or more *pro se* filings.

Regarding prejudice, in addition to the prejudice described with respect to the discussion on the Speedy Trial Act violation, trial is delayed to the middle of March 2021 based solely on the third arbitrary COVID-19 standing order and that stay/extension is expected to be extended further based on nothing to do with the circumstances of this particular case.  While prejudice grows in direct correlation with the increase in delay, prejudice is even greater during the COVID-19 pandemic because Defendant is incarcerated pre-trial in a situation inconsistent with the CDC guidelines on crowd sizes and social distancing to avoid infection.  It is quite incongruous that the Court and the USA delays progression of cases based upon abstract concerns over COVID-19

13

which Defendant is forced to experience more concrete consequences of the COVID-19 pandemic (an increased risk of exposure and contracting COVID-19).

As the Central District of California determined with respect to that District's standing orders delaying trial when despite the holding of grand jury proceedings,

> The Central District denied Mr. Olsen his constitutional right to a … speedy trial. It did so not because it was impossible to conduct the jury trial as is required by the Sixth Amendment. It did so because it was fearful people would get sick from the coronavirus.  But no emergency or crisis, not even the coronavirus pandemic, should suspend the Sixth Amendment or any of our constitutional rights. The Constitution guarantees these rights to us during all times, good or bad. Because Mr. Olsen was denied his Sixth Amendment right to a public and speedy trial, this Court now must dismiss the charges against him, and that dismissal must be with prejudice.

United States v. Olson, 2020 U.S.Dist.Lexis 193045, *28-*295 (C.D.Cal.).[10]

Instantly, issuance of indictment in the instant case was being delayed by standing order despite the convening of grand juries and issuance of indictments in other cases during the period of delay purportedly authorized by this District's standing orders.  In that regard, COVID-19 was not the actual cause of delay in this non-complex matter since the pandemic would delay proceedings in other cases—such as the 114 cases in which the proceedings progressed without delay[11].

Accordingly, if the government—in its actions or inaction rather than through its words— thought so little of this case and the stress and harm (financial and otherwise) to Defendant and his family, then this Court should not ponder long to find no excuse for the pre-indictment delay and to dismiss Counts 1, 2 and 3 of the January 21, 2021 Indictment with prejudice.

---

[10] See Kurtenbach v. Howell, 2020 U.S.Dist.Lexis 243175, *14 (D.S.D.) (citation omitted) ("'There is no pandemic exception to the Constitution.' ….  The federal Constitution, while flexible, does not allow a blanket refusal to afford defendants their rights to a speedy trial").

[11] Mr. Kaetz was unable to file this motion prior to a decision by a grand jury to issue an indictment since, in theory, the grand jury could have decided that probable cause was lacking and chosen to not issue an indictment.  Mr. Kaetz justifiably relied upon the law and rules of criminal procedure.

**Fifth Amendment Right to Due Process**:

> To successfully invoke the due process clause, a defendant must prove actual prejudice and intentional delay by the government to gain a tactical advantage. …. Proof of prejudice, however, does not automatically establish the validity of a due process claim; it only makes one "concrete and ripe for adjudication." ….  Once ripe, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." ….

United States v. Otto, 742 F.2d 104, 107-108 (3d Cir.1984), cert, denied sub nom. Otto v. United States, 469 U.S. 1196 (1985) (citations omitted).

Instantly, the government was able to, but chose not to, obtain a timely indictment in this matter and only obtained and filed an indictment after relief was sought in the United States Court of Appeals for the Third Circuit in the pre-trial detention litigation.  Defendant suggests that, under the circumstances, the government was seeking to obtain a tactical advantage over Defendant.  In doing so, Defendant has heretofore suffered prejudice in the form of extended pre-indictment confinement and anxiety and financial distress flowing therefrom.  Consequently, all charges should be dismissed with prejudice on this basis as well.

WHEREFORE, Defendant requests that this Honorable Court grant relief as follows:

(1) Hearing and oral argument (or post-hearing briefing) on the claims in this Motion;

(2) Dismissal, with prejudice, of the October 18, 2020 complaint and Counts 1, 2 and 3 of the January 21, 2021 indictment in this matter; and

(3) Such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

 /s/ Douglas Sughrue
Douglas Sughrue, Esquire

15