# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL DIVISION |
| vs. | 21-0071 |
| WILLIAM KAETZ a/k/a Bill Kaetz,<br>Defendant. | Honorable J. Nicholas Ranjan |

### REPLY TO USA'S RESPONSE [ECF DOC. 54] TO
### [ECF DOC. 43] MOTION TO DISMISS ON SPEEDY TRIAL

AND NOW, comes the Defendant, William Kaetz a/k/a Bill Kaetz, by and through his undersigned attorney, Douglas Sughrue, Esquire, filing this reply to the USA's response to Mr. Kaetz's motion to dismiss counts 1-3 on speedy trial grounds.

**Assertion of Rights**

Mr. Kaetz has continually raised his right to a speedy trial. The USA concedes as much. Mr. Kaetz asserted his right to a speedy trial within his appeals of his pretrial detention. Mr. Kaetz was concerned that the safeguard against cruel, extensive, pretrial incarceration may not protect him in this matter. Mr. Kaetz's also raised his right to a speedy trial during his arraignment on February 2, 2021. During the arraignment, Counsel was asked by the Court if we wanted the pretrial motions deadline extended by the customary WDPA 45 days. Counsel declined that offer and requested that a trial be scheduled as soon as possible.

**Speedy Trial Act and Constitutional Violations**

To state the obvious, Pennsylvania and New Jersey share a common border. Throughout the covid-19 lockdowns, travel between Pennsylvania and New Jersey was not prohibited. Isolations and quarantines were not required. Daily thousands of people from New Jersey travelled to Pennsylvania to work their essential jobs and vice versa. Indeed, even today, New Jersey distinguishes travel from the immediate region and travel from outside the immediate region. New

Jersey seems to define outside the immediate region as being anywhere outside of New Jersey, New York, Pennsylvania, Connecticut, and Delaware[1].

> New Jersey strongly discourages all non-essential interstate travel at this time. At this time, individuals who have been vaccinated against COVID-19 should continue to follow the State's travel advisory.
>
> Travelers and residents returning from **any U.S. state or territory** beyond the immediate region (New York, Connecticut, Pennsylvania, and Delaware) should self-quarantine at their home, hotel, or other temporary lodging following recommendations from the CDC:
>
> - If travel is unavoidable, travelers should consider getting tested with a viral test (not an antibody test) 1-3 days before the trip and again 3-5 days after the trip.
> - If travelers test positive, they should **self-isolate for at least 10 days and should postpone travel during that time.**
> - If travelers test negative, they should **quarantine for a full 7 days after travel**.
> - If testing is not available (or if the results are delayed), travelers should **quarantine for 10 days after travel**.

Moreover, even today New Jersey still discourages all non-essential travel. Any discouragement by the CDC, Pennsylvania or New Jersey to travel did not apply to essential governmental business. The business of the Courts and general enforcement of the laws of the USA are essential functions of government. Additionally, the USA could have schedule covid-19 testing to ensure they were not asymptomatically spreading covid-19 during their travel. Therefore, despite travel advisories, the USA could have traveled to New Jersey to present their evidence to the Grand Jury in October or early November just as they did in January. In fact, travelling in early November would have predated the CDC's concern of holiday travel hazards.

Impossibility or extreme difficulty is not the question. "Given the constitutional importance of a jury trial to our democracy, a court cannot deny an accused his right to a jury trial even if conducting one is difficult. This is true whether the United States is suffering through a

---

[1] Taken from https://covid19.nj.gov/faqs/nj-information/travel-and-transportation/are-there-travel-restrictions-to-or-from-new-jersey , on March 9, 2021

national disaster, a terrorist attack, civil unrest, or the coronavirus pandemic that the country and the world are currently facing. Nowhere in the Constitution is there an exception for times of emergency or crisis." United States v. Henning, --- F.Supp.3d ---- (2021), 2021 WL 222355.  U.S. District Court Judge Cormac J. Carney goes on to state:

> Continuances under the "ends of justice" exception are appropriate if without a continuance, holding the trial would be *impossible.* 18 U.S.C. § 3161(h)(7)(B)(i). This exception has been used in response to natural disasters and other exigencies, but only where the triggering exigency made the criminal jury trial a physical and logistical impossibility. In *Furlow*, the Ninth Circuit upheld a district court's order finding 14 days excludable where Mount Saint Helens erupted 2 days before the scheduled trial date. 644 F.2d at 767-69. The court began its discussion by noting that "[a] close reading of the Speedy Trial Act ... reveals no reference to the interruptions of nature." *Id.* However, the court explained that the eruption created a "cloud of volcanic dust," and was an incident "of worldwide significance" and "earth-shaking effect" that inflicted a "paralyzing impact on surrounding geographies, including the location of the court where the [defendant] was scheduled for trial." *Id.* at 767. The eruption "obviously interrupted transportation [and] communication," and "affect[ed] the abilities of jurors, witnesses, counsel, [and] officials to attend the trial." *Id.* At 767-68. Since physical circumstances precluded holding a jury trial, and "[t]he district court preserved the procedural safeguards and specified a trial date rather than a *sine die* continuance," the court held that the 14-day continuance did not result in a speedy-trial violation. *Id. at 769*.
>
> Similarly, a New York district court applied the ends of justice exception to exclude a 20-day period after the September 11, 2001 terrorist attacks. *United States v. Correa*, 182 F. Supp. 2d 326, 327 (S.D.N.Y. 2001). In that case, the pretrial conference had been set for September 11, 2001, less than half a mile from the World Trade Center. *Id.* However, after the attacks, the courthouse was evacuated and the jail where the defendant was detained was locked down for security reasons. *Id.* The courthouse, United States Attorney's office, and jail were "closed to all non-emergency personnel for nearly a week." *Id.* Even when they reopened, telephone, fax, and internet access were disrupted at all three locations. *Id.* Lawyers without access to their offices were less able to communicate effectively with the court and other counsel. *Id.* Law enforcement agents, including those working on that specific case, were "massively redeployed to emergency service work and the pressing needs of the terrorist attack." *Id.* "Security concerns and staffing difficulties at the [jail], which ha[d] also suffered dislocation of critical electronic and communications systems, [made] it virtually impossible, and clearly imprudent, to transport prisoners to [c]ourt." *Id.* Given that these numerous complications made holding a jury trial actually impossible, the court concluded that the ends of justice would be served by excluding the 20-day period after the attacks.12

3

> Although there is no question that the current pandemic is serious, conducting a jury trial during the pandemic is clearly not impossible. Unlike in the cases where the ends of justice exception has been applied in the wake of a natural disaster or other exigency, travel and communications continue to function. *See Furlow*, 644 F.2d at 767-69; *Correa*, 182 F. Supp. 2d at 327. Some aspects of the practice of law may be less convenient during this time, but it remains possible to perform necessary trial preparations, access the courthouse, and conduct the trial.13 *See Furlow*, 644 F.2d at 767-69;*Correa*, 182 F. Supp. 2d at 327.

United States v. Henning, --- F.Supp.3d ---- (2021), 2021 WL 222355.

The United States Supreme Court has also spoken about the balancing of our Constitutional rights in covid-19 times. "Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical." *Roman Catholic Diocese*, 141 S. Ct. at 70 (Gorsuch, J., concurring). United States v. Henning, --- F.Supp.3d ---- (2021), 2021 WL 222355. Also, in the decision in Henning, District Court Judge Carney wrote:

> The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of [people], at all times, and under all circumstances." *Ex parte Milligan*, 71 U.S. 2, 120– 21, 4 Wall. 2, 18 L.Ed. 281 (1866). It "is not to be obeyed or disobeyed as the circumstances of a particular crisis in our history may suggest." *Downes v. Bidwell*, 182 U.S. 244, "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of [people], at all times, and under all circumstances." *Ex parte Milligan*, 71 U.S. 2, 120– 21, 4 Wall. 2, 18 L.Ed. 281 (1866). It "is not to be obeyed or disobeyed as the circumstances of a particular crisis in our history may suggest." *Downes v. Bidwell*, 182 U.S. 244, 384, 21 S.Ct. 770, 45 L.Ed. 1088 (Harlan, J., dissenting). It "has no provision lifting restrictions upon governmental authority during periods of emergency." *Dennis v. United States*, 341 U.S. 494, 520, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (Frankfurter, J., concurring). Rather, "[t]he People have decreed that it shall be the supreme law of the land at all times." *Id.* Its "full operation cannot be stayed by any branch of the government in order to meet what some may suppose to be extraordinary emergencies." *Downes*, 182 U.S. at 385, 21 S.Ct. 770 (Harlan, J., dissenting). This is because the drafters "foresaw that troublous times would arise, when rulers and people would become restive under restraint, and seek by sharp and decisive measures to accomplish ends deemed just and proper; and that the principles of constitutional liberty would be in peril, unless established by irrepealable law." *Milligan*, 71 U.S. at 120. The principle that "[g]overnment is not free to disregard the [Constitution] in times of crisis" applies in full force during this pandemic. *Roman Catholic Diocese of Brooklyn v. Cuomo*, ––– U.S. ––––, 141 S. Ct. 63, 69, ––– L.Ed.2d–––– (2020) (Gorsuch, J., concurring).

4

Impossible and difficult do not share the same meaning. Indeed, their meanings do not even overlap. The Bill of Rights in the U.S. Constitution does not take time off. The Bill of Rights was established to protect the freedoms of the individual against the actions of the state. In desperate times, the Bill of Rights is most important. No matter how well meaning, the Court's decision to take away Mr. Kaetz's right to a speedy trial was unconstitutional. Mr. Kaetz's right to be indicted and to a speedy trial as granted to him by statute and the 5th and 6th Amendments to the Constitution. The USA chose inaction. The inaction led to a violation of Mr. Kaetz's rights which should result in the dismissal of counts 1-3 in matter with prejudice.

Respectfully submitted,

  /s/ Douglas Sughrue
Douglas Sughrue, Esquire