# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) 2:21-CR-71 |
| | ) |
| WILLIAM KAETZ, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

A grand jury indicted Defendant William Kaetz on four criminal counts. ECF 31. He now moves to dismiss Counts I-III of the Indictment (ECF 43), which charge him with making threats to assault and murder a United States judge, in violation of 18 U.S.C. § 115(a)(1)(B) & (b)(4) (Count I); making interstate communications containing threats to injure, in violation of 18 U.S.C. § 875(c) (Count II); and making restricted personal information publicly available, in violation of 18 U.S.C. § 119(a)(1) & (a)(2) (Count III). ECF 31.

Mr. Kaetz argues that Counts I-III should be dismissed with prejudice on three alternative grounds: (1) his speedy trial rights under the Speedy Trial Act have been violated, 18 U.S.C. § 3161 *et seq.*, (2) his due process rights under the Fifth Amendment of the United States Constitution have been violated, and (3) his speedy trial right under the Sixth Amendment has been violated. ECF 43. After careful consideration, the Court will deny Mr. Kaetz's motion.

## BACKGROUND

The United States Marshal's Service arrested Mr. Kaetz on October 18, 2020, and the government charged him by criminal complaint that day. ECF 1. Since then, Mr. Kaetz has been detained pending trial. On January 21, 2021, a grand jury indicted Mr. Kaetz. ECF 31. To date, no trial has been scheduled in this case, as the District of New Jersey has suspended all jury trials until June 1, 2021 due to the public-health risks concerning COVID-19. *See* Standing Order 2021-04 (Mar. 11,

2021).¹  The crux of Mr. Kaetz's motion is that the delay between his arrest and indictment (about three months total), and his arrest and any trial (about eight months total), violates his statutory and constitutional speedy trial rights.

## ANALYSIS

**I.  Mr. Kaetz's statutory speedy trial rights under the Speedy Trial Act have not been violated due to pre-indictment delay.**

Mr. Kaetz argues that his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, were violated because the indictment was filed more than 30 days after his arrest.  He asserts that Counts I-III should therefore be dismissed with prejudice.  The Court disagrees.  While the indictment was filed more than 30 days after Mr. Kaetz's arrest (95 days, to be exact), the speedy trial clock was tolled, such that the additional 65 days of delay are properly excluded in calculating Mr. Kaetz's speedy trial rights under the Act.

Under 18 U.S.C. § 3161(b), an indictment "shall be filed within thirty days from the date on which such individual was arrested."  But this 30-day period may be tolled (*i.e.*, the passage of time excluded from the 30-day calculation) in certain instances, including if the Court finds "that the ends of justice served by [excluding time from the 30-day calculation] outweigh the best interest of the public and the defendant in a speedy trial," and states, on the record, its reasons for finding so.  18 U.S.C. § 3161(h)(7)(A); *see also* 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) ***as extended by***

---

¹ The standing orders can be found at: https://www.njd.uscourts.gov/standing-orders (last visited April 1, 2021).

***section 3161(h) of this chapter***, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." (emphasis added)).

The Court finds that under § 3161(h)(7)(A), the 30-day period for Mr. Kaetz's indictment did not expire before the indictment was filed, because that time period was effectively tolled. As has been common practice throughout the federal courts nationwide since the onset of COVID-19, the District of New Jersey has implemented multiple standing orders to address and mitigate the virus's spread. As relevant here, on September 23, 2020, Chief Judge Wolfson extended the District's then-operative standing order implemented in response to COVID-19. ECF 18. In the September 2020 standing order, Chief Judge Wolfson continued all jury trials to January 4, 2021, continued the 30-day period to file an indictment under § 3161(b) to January 4, 2021, and deemed the time through January 4, 2021 as "excluded time" under the Speedy Trial Act. *Id.* at ¶¶ 1-3. Similarly, on December 17, 2020, Chief Judge Wolfson again extended these standing orders, continuing all jury trials to March 12, 2021, continuing the 30-day period to file an indictment to March 12, 2021, and deeming the time through March 12, 2021 as "excluded time" under the Speedy Trial Act. ECF 26, ¶¶ 1-3.

In excluding this time under the Speedy Trial Act, Chief Judge Wolfson expressly documented multiple reasons for, and factual findings to support, the standing orders that are relevant here, including: state and federal guidelines that emphasized the importance of "social distancing" and limiting group gatherings to reduce the spread of COVID-19; the high rate of COVID-19 infections; the fact that trials and grand jury proceedings require the travel and congregation of large groups of people; and the added hardships on members of the public, due to COVID-19, if called to be a potential juror. *See* ECF 18, pp. 1-2; ECF 26, pp. 1-2. Then, in continuing and excluding the time to file an indictment, Chief Judge Wolfson concluded, "recognizing the public health and safety issues stated herein, the Court

determines that the ends of justice served by granting such a continuance outweigh the best interests of the public and each defendant in a speedy indictment and a speedy trial in a criminal case." ECF 18, ¶ 3; ECF 26, ¶ 3.  And this was after Chief Judge Wolfson had "considered the factors outlined in 18 U.S.C. § 3161(h)(7)(B)." ECF 18, ¶ 2; ECF 26, ¶ 2.

This Court concludes that Chief Judge Wolfson's standing orders excluded the time between Mr. Kaetz's arrest and his indictment being filed, such that the 30-day period had not expired when the indictment was filed on January 21, 2021.  The well-supported standing orders, predicated on findings pertaining to "real time" public-health risks, properly tolled the speedy trial clock.  *See, e.g.*, *United States v. Lev*, No. 17-3195, 2020 WL 2615477, at *3 (D.N.J. May 22, 2020) (finding that the District of New Jersey's standing orders in response to COVID-19 tolled the speedy trial clock, and opining that "it is . . . the unique nature of the pandemic . . . that convinces the Court not only that the Standing Orders now under attack were both reasonable and necessary, but also that it is fair to apply them in Defendant's case"); *see also United States v. Diaz-Nivar*, No. 20-38, 2020 WL 3848200, at *3-4 (D.N.H. July 8, 2020) (excluding time under 18 U.S.C. § 3161(h)(7)(A) due to COVID-19, and collecting similar cases); *United States v. Pair*, — F. Supp. 3d — , 2021 WL 279239, at *6-7 (E.D. Va. Jan. 27, 2021) (same).

Mr. Kaetz's arguments to the contrary are unavailing.  Mr. Kaetz argues that, despite these applicable standing orders, the government could have obtained the indictment within 30 days of his arrest.  He emphasizes that the government did, in fact, obtain indictments in other cases shortly after his arrest.  Thus, Mr. Kaetz asserts that it was "possible" for the government to have obtained his indictment

sooner, so it was unreasonable for the government not to do so. This means, according to Mr. Kaetz, that his rights under the Speedy Trial Act were violated.

The Court disagrees. That some indictments were returned in other cases doesn't undercut the validity or applicability of Chief Judge Wolfson's standing orders, which balanced serious public-health risks and the limited ability to convene grand jurors. It was to be expected that some, but not all, backlogged cases could be indicted given the limited grand jury proceedings. Indeed, beginning in March 2020, the District of New Jersey limited the availability of grand juries due to COVID-19 concerns.[2] Considering that for much of the past year, grand juries were either unable to convene, or were able to convene only if "essential" and "necessary," it's not unexpected that there was a backlog of needed indictments, and thus that there were delays in indictments being returned. As such, the fact that some indictments were returned after Mr. Kaetz's arrest does not, standing alone, show that the government was negligent or operated in bad faith in failing to indict this case.

In any event, the "impossibility" of obtaining an indictment is only one factor to consider in deciding whether an extension of the speedy trial deadlines furthers

---

[2] "[N]o new grand juries will be empaneled during the period of March 16, 2020 to April 30, 2020, or such other date set by the Court." *See* Standing Order 2020-02, ¶ 11 (Mar. 16, 2020). These limits on the availability of grand juries continued through much of 2020. *See, e.g.*, Standing Order 2020-09, ¶ 5 (April 17, 2020); Standing Order 2020-12, ¶ 5 (May 22, 2020) ("Through prior Standing Orders, the Court prohibited the empanelment of new grand juries during the period of March 16, 2020 to May 31, 2020. The Court now ORDERS that no new grand juries shall be empaneled until further order of the Court."); Extension of Standing Order 2020-12, ¶ 4 (Aug. 17, 2020) (same); Second Extension of Standing Order 2020-12, ¶ 4 (Sept. 23, 2020) (allowing new grand juries to convene); Standing Order 2020-17, ¶ 4 (Nov. 25, 2020) ("[G]rand jury sittings in this District shall be limited to one in Newark and one in Camden, subject, however, to the right of the U.S. Attorney's Office to convene an additional grand jury session in Newark should circumstances warrant, and furthermore, grand jury proceedings shall continue only to the extent that they are essential."); Extension of Standing Order 2020-17, ¶ 4 (Dec. 17, 2020) ("Until further Order of the Court, grand jury sittings in this District shall be limited and convened only to the extent deemed necessary and warranted under the circumstances.").

the ends of justice. *See* 18 U.S.C. § 3161(h)(7)(B) ("The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows . . . ."); *see also Pair*, — F. Supp. 3d —, 2021 WL 279239, at *6. ("Whether the failure to grant such a continuance in the proceeding would be likely to make continuation of such proceeding impossible is only one of those factors." (cleaned up)). So even if obtaining an indictment was possible within the 30-day window, when considered with the public-health risks associated with conducting curtailed in-person proceedings amidst COVID-19, Chief Judge Wolfson correctly found that the ends of justice outweighed the rights of defendants to an indictment within the Act's deadlines.

In sum, the Court concludes that Mr. Kaetz's rights under the Speedy Trial Act were not violated when the indictment was filed more than 30 days after his arrest. The Court will thus deny Mr. Kaetz's motion to dismiss Counts I-III based on the Speedy Trial Act.[3]

## II. Mr. Kaetz's due process rights under the Fifth Amendment have not been violated due to pre-indictment delay.

Mr. Kaetz argues that his Fifth Amendment due process rights have been violated as a result of the pre-indictment delay in this case. But Mr. Kaetz has failed

---

[3] Even if Mr. Kaetz were right and his statutory rights were violated, at most, he would be entitled to dismissal of the indictment without prejudice—relief that he does not seek. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). First, as previously explained in affirming Mr. Kaetz's detention order, this Court found that Mr. Kaetz's offense is serious. *See United States v. Kaetz*, No. 20-1090, ECF 16 (D.N.J. Jan. 4, 2021). Second, any delay in the government obtaining the indictment against Mr. Kaetz, and thus the alleged violation of the Speedy Trial Act, can be attributed to delays caused by COVID-19, which—as Mr. Kaetz recognizes—is not attributable to the government. *See* ECF 43, p. 12, n.9; *see also United States v. Stevenson*, 832 F.3d 412, 420 (3d Cir. 2016) ("This factor requires courts to consider the reasons for the

to meet his burden of showing a due process violation. The Court will therefore deny Mr. Kaetz's motion to dismiss Counts I-III based on the Fifth Amendment.

Mr. Kaetz "can make out a claim under the Due Process Clause only if he can show both (1) that the delay between the crime and the federal indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him." *United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000) (citing, among other cases, *United States v. Lovasco*, 431 U.S. 783, 789–90, 795–96 (1977)). It is Mr. Kaetz's burden to make these showings. *See id.*; *United States v. Otto*, 742 F.2d 104, 108 (3d Cir. 1984).

Mr. Kaetz has failed to show both actual prejudice and prosecutorial bad faith; the absence of either is fatal to his due process claim. *See, e.g.*, *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985) ("Appellants must show intentional delay *and* actual prejudice. Because they clearly failed to show intentional delay, we need not reach the question whether appellants have met the burden of showing actual prejudice."). To begin with, Mr. Kaetz has not shown that he has suffered any actual prejudice to his defense. He instead provides only general allegations of hardships, experienced by every inmate detained before trial, that are unrelated to his ability to prepare or present his defense. *See, e.g.*, ECF 43, pp. 11, 13-15. This is insufficient. *See, e.g.*, *Beckett*, 208 F.3d at 151 ("[Defendant] has not shown . . . actual prejudice. . . . He does not, for instance, claim that items of evidence or documents were lost,

---

delay: did it stem from intentional dilatory conduct or a pattern of neglect on the part of the Government, or rather, from a relatively benign hitch in the prosecutorial process?" (cleaned up)). Third, the impact of a reprosecution and the administration of justice concern prejudice to the defendant and prosecutorial misconduct, which are absent here. *See Stevenson*, 832 F.3d at 422 ("The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." (cleaned up)).

witnesses became unavailable, or that memories faded as the result of the six month delay.").

Further, Mr. Kaetz has not shown that the government deliberately delayed bringing the indictment to obtain an improper tactical advantage or to harass him. Indeed, after asserting that the government obtained indictments in other cases shortly after his arrest, Mr. Kaetz simply "suggests that, under the circumstances, the government was seeking to obtain a tactical advantage over [Mr. Kaetz]." ECF 43, p. 15. But the Court has already discussed why Mr. Kaetz's reliance on other indictments being filed is unavailing here. *Cf. Otto*, 742 F.2d at 108 ("An indictment brought within the statute of limitations meets the time restrictions found appropriate by Congress."). Additionally, Mr. Kaetz's "suggestion" of bad faith, without more, falls well short of showing intentional prosecutorial bad faith. *See, e.g.*, *Sebetich*, 776 F.2d at 430 ("Appellants have not demonstrated prosecutorial bad faith. . . . [T]hey have produced no evidence tending to suggest that the delay was a deliberate tactical maneuver by the government." (cleaned up)).

Therefore, the Court will deny Mr. Kaetz's motion to dismiss Counts I-III based on the Fifth Amendment.

### III. Mr. Kaetz's speedy trial right under the Sixth Amendment has not been violated due to delays before trial.

Mr. Kaetz also argues that Counts I-III should be dismissed with prejudice because his speedy trial right under the Sixth Amendment has been violated. While Mr. Kaetz's Speedy Trial Act and Fifth Amendment claims focus on pre-indictment delay, his Sixth Amendment claim appears to concern the delay from arrest to trial (trial would be, at the earliest, June 1, 2021). The Court, however, concludes that

any delay to trial, at least at this juncture, has not risen to the level of a constitutional violation.

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" This does not mean, however, that any delay before trial violates the right. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). Rather, the Sixth Amendment's speedy trial right is meant to protect three primary interests of the defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). And of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* As such, the Supreme Court in *Barker* provided two paradigmatic (though not exclusive) examples of such undue prejudice that implicate the Sixth Amendment: delay that results in witnesses dying, and delay that results in witnesses' loss of memory. *Id.*

To determine whether the defendant's Sixth Amendment speedy trial right has been violated, the Supreme Court established a four-factor balancing test: "[(1)] whether delay before trial was uncommonly long, [(2)] whether the government or the criminal defendant is more to blame for that delay, [(3)] whether, in due course, the defendant asserted his right to a speedy trial, and [(4)] whether he suffered prejudice as the delay's result." *Doggett*, 505 U.S. at 651 (citing *Barker*, 407 U.S. at 530).

The first factor—length of the delay—is a "triggering mechanism," meaning that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530; *see also Doggett*, 505 U.S. at 651-52 ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the

- 9 -

threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (cleaned up)). Put simply, unless the defendant first shows that the delay between his arrest[4] and his trial is "presumptively prejudicial," there can be no violation of the Sixth Amendment's speedy trial provision, and the Court need not weigh the remaining factors. *See, e.g.*, *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014).

The Supreme Court and the Third Circuit both recognize that, generally, a delay between arrest and trial is not presumptively prejudicial (so as to trigger the remaining factors) until the delay approaches one year. *See, e.g.*, *Doggett*, 505 U.S. at 652, n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."); *id.* at 657-58 (using the one-year timeframe as the baseline for establishing presumptively prejudicial delay); *Velazquez*, 749 F.3d at 174 ("This Circuit has concluded that a delay of fourteen months is sufficient to trigger review of the remaining *Barker* factors, and once that threshold has been passed, the state, not the prisoner, bears the burden to justify the delay." (cleaned up)); *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009); *Hakeem v. Beyer*, 990 F.2d 750, 761 (3d Cir. 1993) ("[T]hough rigid time limitations have been rejected in analyzing the constitutional right to a speedy trial, we agree with the district court that a fourteen and one-half

---

[4] The Sixth Amendment's speedy trial right is implicated once the defendant is arrested. *See United States v. Loud Hawk*, 474 U.S. 302, 310-11 (1986) ("When no indictment is outstanding, only the actual restraints imposed by arrest and holding to answer a criminal charge engage the particular protections of the speedy trial provision of the Sixth Amendment." (cleaned up)).

month detention before trial merits further inquiry." (cleaned up)); *United States v. Briggs*, 471 F. Supp. 3d 634, 639 (E.D. Pa. 2020) ("A five-month delay . . . is not presumptively prejudicial." (citation omitted)). The one-year period of delay, however, is not a strict rule, and more or less time may be permissible based on the relevant circumstances. *See, e.g.*, *Barker*, 407 U.S. at 530 ("[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.").

Here, Mr. Kaetz does not make the necessary threshold showing, and thus his Sixth Amendment claim fails at the outset. Mr. Kaetz was arrested on October 18, 2020, a period of just over five months ago. Not only does this "delay" fall well short of the one-year timeframe generally thought of as presumptively prejudicial, Mr. Kaetz fails to show how the circumstances of his specific case render this relatively short delay presumptively prejudicial.[5] Further, Mr. Kaetz's insufficient showing notwithstanding, the Court does not view the relatively short delay in this case as presumptively prejudicial, even if trial is postponed to June 2021, considering the nature of this case and the present circumstances. As Mr. Kaetz has not satisfied his threshold burden, his Sixth Amendment claim falls short.

Moreover, even if the delays in this case were presumptively prejudicial, thus triggering the remaining *Barker* factors, the Court still finds no violation of the Sixth Amendment speedy trial right after weighing all four *Barker* factors.

First, even assuming the length of the delay is presumptively prejudicial, the Court finds that the relatively short delay at issue here weighs against finding a speedy trial violation. *See Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991)

---

[5] While Mr. Kaetz addresses the other *Barker* factors (ECF 43, pp. 11-14), he does not explain how any delays here are presumptively prejudicial. Without this threshold showing, the other *Barker* factors are not implicated.

- 11 -

("[A]lthough long enough to require plenary inquiry into the remaining *Barker* factors, the petitioners' pretrial incarceration of 217 days is not compelling.").

Second, as to the cause for the delay, the Court concludes that this is, at most, a neutral consideration, and does not weigh in favor of finding a violation. *See, e.g.*, *Doggett*, 505 U.S. at 656-57 (explaining that the government's "reasonable diligence" means there is no speedy trial violation; the government's "bad-faith delay" for tactical advantages means there is a violation; and delays resulting from the government's negligence, while not a per se violation, weigh in favor of a speedy trial violation); *Barker*, 407 U.S. at 531.

Here, there is no evidence that the delays result from the government's bad-faith tactics; nor do the delays appear to result from the government's negligence. Rather, as demonstrated by the District of New Jersey's standing orders in response to COVID-19, any delays in Mr. Kaetz's indictment or trial are the reasonable result of COVID-19, which, as Mr. Kaetz recognizes, is not attributable to the government. ECF 43, p. 12, n.9; *see also* ECF 54, ¶ 63. While Mr. Kaetz argues that the government was at least negligent in obtaining an indictment, as evidenced by grand juries bringing indictments in other cases (ECF 43, pp. 12-13), this argument is unpersuasive, as discussed above. As well, this case is particularly unique in that government lawyers from the Western District of Pennsylvania must prosecute this case in the District of New Jersey. Thus, even setting aside that the ease of obtaining indictments varies depending on the case, the burdens imposed here are greater than normal. While not Mr. Kaetz's doing, the added burdens on the government further show that any delays are not due to the government's negligence. Additionally, the

difficulties and limitations caused by COVID-19 are undeniable, and Mr. Kaetz's inferences and arguments to the contrary are unpersuasive.

Third, the Court finds that Mr. Kaetz timely and adequately asserted his right to a speedy trial at various points in this case. This weighs in his favor.

Fourth, as to any prejudice to Mr. Kaetz, the Court concludes that this weighs against finding a speedy trial violation here. *See, e.g.*, *Barker*, 407 U.S. at 532 ("Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last[.]" (cleaned up)); *see also Hakeem*, 990 F.2d at 761 ("We do not think pretrial incarceration of either thirteen or fourteen and one-half months demonstrates per se oppressive pretrial delay.").

Mr. Kaetz does not show sufficient prejudice to support his Sixth Amendment claim. Rather, he cites to general concerns of COVID-19 in prison (ECF 43, pp. 13-15)—a concern that many inmates generally have—which does not constitute "oppressive" incarceration. Nor do Mr. Kaetz's general COVID-19 concerns show any actual prejudice. Mr. Kaetz also alludes to the anxiety, financial difficulties, and hindered relationships that his detention is causing him and his family. *Id.* at p. 11. While lengthy pretrial incarceration is a concern because of these considerations (*see Barker*, 407 U.S. at 532-33), these are also obstacles that every incarcerated individual experiences. As noted, however, the Sixth Amendment is concerned with preventing "oppressive" pretrial incarceration. *Id.* at 532. Thus, something more than Mr. Kaetz's generalized allegations of common hardships is required. *See, e.g.*, *Hakeem*, 990 F.2d at 762 ("[Defendant] cannot prevail merely by claiming that fourteen and one-half months of anxiety over the outcome of the trial has prejudiced him to the extent necessary to prevail on a Sixth Amendment claim. Vague

- 14 -

allegations of anxiety are insufficient to state a cognizable claim."). That is particularly so in light of Mr. Kaetz's failure to show that his defense has been impaired in any way.

At bottom, the Sixth Amendment's concerns of serious prejudice against a defendant are not implicated by Mr. Kaetz's pretrial incarceration. Accordingly, the Court will deny Mr. Kaetz's motion to dismiss Counts I-III based on the Sixth Amendment.

## **CONCLUSION**

For these reasons, it is **ORDERED** that Defendant's motion to dismiss Counts I-III of the indictment (ECF 43) is **DENIED**.

DATE: April 5, 2021                  BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge
*Sitting by designation